*938 TEXTO COMPLETO DE LA RESOLUCION
En fecha 8 de agosto de 2000, el Tribunal de Primera Instancia, Sala Municipal de Mayagüez, a solicitud de la recurrida, Astrid Castro Cuevas, expidió una orden de protección contra el peticionario. Ledo. José R. López de Victoria Bras, de conformidad con la "Ley Contra el Acecho en Puerto Rico", Ley Núm. 284 de 21 de aeosto de 1999.
La señora Castro Cuevas está casada con el señor Ingo Stapelfeld Hoheisel y tienen tres (3) hijos menores de edad. La pareja se encuentra en trámites de divorcio, siendo el Ledo. López de Victoria el representante legal del Sr. Stapelfeld en dichos procedimientos judiciales.
Surge del expediente que a raíz de ciertas situaciones conflictivas suscitadas entre la pareja durante el proceso de divorcio, la recurrida solicitó una orden de protección contra el Ledo. López de Victoria Bras. La Sra. Castro Cuevas basó su solicitud en que se sentía intimidada por las actuaciones del peticionario durante incidentes habidos entre ella y su esposo, motivados por diferencias concernientes a las relaciones patemo-filiales del Sr. Stapelfeld con sus hijos.
Imputó al peticionario haber incurrido en conducta constitutiva de acecho en su contra, según definido por la Ley 284, supra, durante los días 22 de abril de 2000 y 17 de junio del mismo mes y año. Alegó que éste se personó a su residencia en tres (3) ocasiones, en actitud hostil e intimidante y en compañía de su esposo, solicitando se le entregaran los hijos de la pareja al Sr. Stapelfeld, aun cuando no le correspondía estar con ellos en tales fechas. Expresó que en dichas ocasiones, los niños se sintieron atemorizados. En una ocasión, al regresar a su hogar, la recurrida encontró una tarjeta de presentación del Ledo. López de Victoria con el siguiente mensaje 4 veces se ha venido a buscar a los niños". Luego, se percató de que el peticionario y su *939 esposo "estaban esperando en la otra calle a que yo llegara, se cuadraron y no se querían ir hasta que yo le diera a los niños". 
Así las cosas, la recurrida decidió acudir al cuartel de la policía a solicitar ayuda. Mientras se encontraba en el cuartel, el Ledo. López de Victoria Bras, alegadamente, al ver su vehículo frente al cuartel entró a éste preguntando a uno de los oficiales si la Sra. Castro estaba formulándole alguna querella. A renglón seguido, le dijo al oficial que parecía que la representante legal de la recurrida le había dicho a ésta que le radicara una querella. En dicha ocasión, la recurrida fue orientada por la policía en relación al procedimiento para solicitar una orden de protección. Luego ésta radicó la querella contra el Ledo. López de Victoria, y la policía le aconsejó acudir a la Fiscalía para obtener mayor orientación. En su visita a la Fiscalía, la recurrida dialogó con el Fiscal Néstor García Sotero quien le ofreció orientación sobre la Ley Contra el Acecho, supra. 
Se citó a las partes para que comparecieran ante la policía, el día 7 de agosto de 2000. La recurrida compareció a dicha cita, no así el peticionario. Así las cosas, la recurrida acudió al tribunal de instancia y solicitó la expedición de una orden de protección en contra del Ledo. López de Victoria. El juez a cargo del caso, luego de escuchar las alegaciones de ésta, emitió una orden de protección provisional que estuvo vigente desde el 8 de agosto de 2000 hasta el día 10 del mismo mes y año. Además, expidió citación a los fines de que el Ledo. López de Victoria compareciera al Tribunal, el día 10 de agosto de 2000.
A la vista pautada para la fecha antes indicada comparecieron ambas partes. Luego de escuchar los testimonios vertidos por la recurrida, por el peticionario y por tres (3) testigos que declararon a favor de este último, el Juez Hon. Emilio Mulero Arruza determinó que la recurrida fue víctima de acecho provocado por el peticionario y dictó orden de protección al amparo de la Ley Contra el Acecho, supra. 
Dicho mandato posee un término de vigencia de un (1) año, y en virtud del mismo se ordenó al Ledo. López de Victoria a abstenerse de acosar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con la recurrida y/o con miembros de su familia. Además, se le ordenó abstenerse de penetrar o acercarse al hogar de ésta, o su lugar de morada permanente o provisional. Se citó al peticionario a una vista a ser celebrada el 10 de agosto de 2001, fecha en la cual expira la orden de protección.
En virtud de lo anterior, el Ledo. López de Victoria compareció ante nos, por derecho propio, imputando al foro de instancia la comisión de los siguientes errores:

"a) Erró el Tribunal de Instancia Municipal de Mayagüez al emitir una Orden de Asecho (sic) contra el suscribiente sin elementos de juicio, sin que se emitiera (sic) delito alguno y sin analizar la relación abogado-cliente.

b) Erró el Tribunal de Instancia, Sala Municipal de Mayagüez, al hacer determinaciones sin elementos de juicio, en abuso del derecho y aplicación incorrecta de la ley.

e) Erró el Tribunal Municipal al impedir la presentación de evidencia (documental perjudicial e incriminativa (sic) a la parte (p)eticionaria apelada sobre sus actos...".

El peticionario alega, en síntesis, que el foro de instancia actuó con prejuicio y parcialidad al emitir la orden recurrida e imputa a la representante legal de la Sra. Astrid Castro Cuevas, en el caso de divorcio, haber "maquinado" en su contra para que se emitiera dicha orden. Además, niega que haya incurrido en conducta constitutiva de acecho contra la recurrida. Por tanto, solicita se revoque la orden de protección emitida.
El 28 de septiembre de 2000, este foro apelativo emitió resolución concediendo a la recurrida un término de veinte (20) días para presentar su posición en tomo al recurso instado.
*940 En fecha 6 de octubre de 2000, la Leda. Lourdes Ortiz Pagán, representante legal de la recurrida en los procedimientos de divorcio, nos informó, mediante comparecencia especial, que no es ni ha sido parte en los procedimientos conducentes a la obtención de la orden recurrida, y solicitó al peticionario que no le vuelva a notificar ningún otro escrito que radique con relación a este caso. Asimismo, solicitó que se elevara el expediente del caso a la consideración del Tribunal Supremo, dadas las serias imputaciones que el Ledo. López de Victoria presenta en su contra en el recurso.
El 11 de octubre de 2000, la recurrida, Astrid Castro Cuevas, compareció por derecho propio ante este Tribunal, presentando su alegato.
Examinado el expediente, el derecho aplicable y con el beneficio de la comparecencia de ambas partes, procede disponer del recurso instado.
I
La Ley 284, supra, en su Art. 3 (a) define el acecho como:

"un patrón de conducta mediante el cual se mantiene constante o repetidamente una vigilancia o proximidad física o visual sobre determinada persona; se envían repetidamente comunicaciones verbales o escritas no deseadas a una determinada persona, se envían repetidamente amenazas escritas, verbales o implícitas a determinada persona; se efectúan repetidamente actos de vandalismo dirigidos a determinada persona; se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a molestar, perseguir o perturbar a la víctima o a miembros de su familia. El patrón de conducta constante debe ser en forma ininterrumpida durante un período de tiempo que no sea menor de quince minutos". 

En dicha pieza, el legislador expresa que el acecho constituye una forma de actividad criminal compuesta de una serie de actos que al ser examinados individualmente pueden parecer un comportamiento legal, tales como enviar flores, escribir cartas de amor y esperar por una persona fuera de su lugar de trabajo o de su casa; actos que de por sí no constituyen conducta criminal. No obstante, el legislador expresa que estos actos, unidos a intentos de atemorizar, intimidar o hacer daño a una persona, o a miembros de su familia o a su propiedad, pueden constituir un patrón de conducta ilegal. 
Se advierte que el acecho contra una persona puede ocurrir en una amplia variedad de situaciones o en diversos tipos de relaciones, no necesariamente de naturaleza íntima. Esta conducta puede ser perpetrada por un mero conocido de la víctima, un antiguo compañero de trabajo o por un desconocido. Las motivaciones del ofensor pueden incluir atracción intensa u odio extremo, deseos de contacto y control, obsesión, celos y coraje, entre otras. 
El propósito de esta legislación es crear los mecanismos necesarios para criminalizar, penalizar y permitir la oportuna intervención de la policía ante tales actos para proteger debidamente a personas que son víctimas de acecho, evitando posibles daños a su persona, sus bienes o a miembros de su familia.
En el contexto de la Ley 284, supra, intimidar implica toda acción o palabra que manifestada repetidamente infunda temor en el ánimo de una persona prudente y razonable a los efectos de que ella, o cualquier miembro de su familia pueda sufrir daños, en su persona o en sus bienes, y/o ejercer presión moral sobre el ánimo de ésta para llevar a cabo un “acto contrario a su voluntad". 
Esta Ley, en su Artículo 5, provee para la emisión de órdenes de protección a favor de las víctimas de acecho. El referido estatuto, en su Artículo 6, dispone un procedimiento expedito para la emisión de dichas órdenes de protección. Dicho articulado dispone:

"Artículo 6.-Procedimiento para la Expedición de Ordenes de Protección.-

*941
(a) El procedimiento para obtener una orden de protección se podrá comenzar mediante la.presentación de una petición verbal o escrita; o dentro de cualquier caso pendiente entre las partes, o a solicitud del Ministerio Fiscal en un procedimiento penal, o como una condición para disfrutar de sentencia suspendida o de libertad condicional.

(b) Para facilitar a las personas interesadas el trámite de obtener una orden de protección bajo esta Ley, la Oficina de Administración de los Tribunales tendrá disponible en la Secretaría de los Tribunales de Puerto Rico formularios para solicitar y tramitar dicha orden. Asimismo, proveerá la ayuda y orientación necesaria para cumplimentarlos y presentarlos.

(c) Una vez presentada una petición de orden de protección, de acuerdo a lo dispuesto en esta Ley, el Tribunal expedirá una citación a las partes bajo apercibimiento de desacato, para una comparecencia dentro de un término que no excederá de cinco (5) días. La notificación de las citaciones y copia de la petición se hará conforme a las Reglas de Procedimiento Civil de Puerto Rico de 1979, según enmendadas [32 L.P.R.A. Ap. lili], y será diligenciada por un alguacil del Tribunal o por cualquier otro oficial del orden público, a la brevedad posible, y tomará preferencia sobre otro tipo de citación, excepto aquéllas de similar naturaleza. El Tribunal mantendrá un expediente para cada caso en el cual se anotará toda citación emitida al amparo de esta Ley.

(d) La incomparecencia de una persona debidamente citada, al amparo de esta Ley, será condenable como desacato criminal al Tribunal que expidió la citación.

(e) Cuando la petición sea presentada, la notificación de la misma se efectuará conforme a lo establecido en las Reglas de Procedimiento Civil de Puerto Rico de 1979, según enmendadas 132 L.P.R.A. Ap. lili. A solicitud de la parte peticionaria, el Tribunal podrá ordenar que la entrega de la citación se efectúe por cualquier persona mayor de dieciocho (18) años de edad que no sea parte, ni tenga interés en el caso."

En el caso de marras, el foro de instancia aquilató y evaluó la prueba presentada y formuló determinaciones de hechos. Al así hacerlo, concluyó que la recurrida fue víctima de acecho, según definida esta conducta por la Ley 284, supra, y a la luz de dicha determinación expidió la orden de protección cuya procedencia se objeta en el presente recurso. Es norma reiterada de nuestro ordenamiento que las determinaciones de los tribunales de instancia deben ser objeto de gran deferencia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. Belk Arce v. Martínez, Opinión de 30 de junio de 1998, 98 J.T.S. 92; Orta v. Padilla Ayala, Opinión de 8 de febrero de 1995, 95 J.T.S. 21; Cooperativa de Seguros Múltiples v. Lugo, Opinión de 25 de mayo de 1994, 94 J.T.S. 77; Benítez Guzmán v. García Merced, 126 D.P.R. 302 (1990); Riley v. Rodríguez Pacheco, 119 D.P.R. 762 (1987); Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721 (1984).
Asimismo, en aquellos casos en los cuales el juzgador haga determinaciones al amparo del poder discrecional que le confiere un estatuto o regla, éstas deberán ser respetadas por los foros apelativos, a menos que se demuestre arbitrariedad, un craso abuso de discreción, una determinación errónea que cause grave perjuicio a una de las partes, o la necesidad de un cambio de política pública procesal o sustantiva. Cf. Lluch v. España Service Sta., 117 D.P.R. 729 (1986): Ex Parte Valencia, 116 D.P.R. 909 (1986); Ortiz Rivera v. Agostini, 92 D.P.R. 187 (1965).
Dicha deferencia tiene base en el hecho de que los jueces de instancia están en mejor posición que los foros apelativos para aquilatar la evidencia que desfila en los procedimientos ante sí. Pueblo v. Collado Justiniano, Sentencia de 29 de febrero de 1996, 96 J.T.S. 23; Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981).
Así las cosas, los tribunales apelativos no deben intervenir en las determinaciones de los foros de instancia sobre el trasfondo fáctico de un caso, salvo en las circunstancias antes mencionadas, sustituyendo el criterio del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su *942 "demeanor". Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); Pérez Cruz v. Hospistal La Concepción, supra; Vélez v. Secretario de Justicia, 115 D.P.R. 533 (1984); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357(1982).
Al tenor de dichas normas, hemos acordado no intervenir con la determinación del foro de instancia en este caso. Veamos porqué.
En el presente recurso, el peticionario objeta la expedición de la orden emitida por el foro de instancia alegando que el juez "actuó con prejuicio y parcialidad admitiendo y aceptando hechos en calumnia, falsedades, imprecisiones y reclamo de un acecho con la utilización por la peticionaria de los que son contrarios a los motivos, definiciones y procedimientos de la Ley 284 para causar daños al apelante-peticionario ante su conducta personal... . Alega que de existir anotaciones hechas por el Juez en cuanto al caso, "las mismas carecen de veracidad ante su prejuicio y parcialidad". El peticionario intima que fue falso el testimonio vertido por la Sra. Castro Cuevas ante el magistrado durante la vista del caso.
De otra parte, también aduce que el juez de instancia no admitió, ni le permitió presentar prueba sobre la supuesta maquinación habida entre la recurrida y su representante legal en el caso de divorcio para solicitar una orden de protección contra él a los fines de amedrentarlo e injuriarlo. Señala que la admisión de dicha prueba era necesaria para un mejor análisis de la situación, e indica que “la trayectoria de la peticionaria Castro Cuevas y su representante legal ... se evidencian (sic) atraves (sic) de los escritos que acompañamos (en el recurso)...". Plantea que "la situación creada por ambas personas constituye un abuso e intorimisión (sic) bajo el hecho ser de sexo femenino en la utilización de esa condición para lograr el abuso del derecho sin justificación". En consecuencia, solicita que consideremos la evidencia excluida por el tribunal recurrido.
Aunque el peticionario admite que se personó a la residencia de la recurrida, alega que no incurrió en la conducta imputada, pues "nunca surgió situación alguna que fuera motivo de la aplicación de la Ley 284", y nunca acoso, intimido, persiguió, amenazó, ni intervino con la peticionaria en horas del día, ni de la noche, según se requiere por las disposiciones de la Ley Num. 284...". Este indica que sus actuaciones no constituyeron acecho, aunque sí el descargo de sus deberes como abogado del Sr. Stapelfeld.
En primer lugar, dispongamos del señalamiento concerniente a la alegada falsedad del testimonio vertido por la recurrida, en el cual el foro de instancia basó su determinación de expedir la orden de protección, otorgando así mayor credibilidad a dichas declaraciones que a las presentadas por los testigos del peticionario. 
El peticionario no evidencia en modo alguno sus alegaciones en cuanto al particular. A través de todo su escrito se limita a reiterar que la determinación del juez de instancia, en cuanto a que él incurrió en conducta constitutiva de acecho contra la recurrida, estuvo parcializada y se basó en falsedades. Es norma reiterada que meras alegaciones o teorías no constituyen prueba. Asociación Auténtica de Empleados v. Municipio de Bayamón, 111 D.P.R. 527 (1981). Asi las cosas, el peticionario no nos coloca en posición de adjudicar dichos planteamientos.
Ademas, habiendo conferido el juez de instancia entero crédito al testimonio de la recurrida, el mismo constituyó evidencia suficiente para probar que el recurrido intimidó a aquélla en repetidas ocasiones, incurriendo así en conducta constitutiva de acecho, razón por la cual procede conceder deferencia a su determinación. Dicho magistrado estuvo en mejor posición que este foro apelativo para aquilatar dicha evidencia y observar el "demeanor" de todos los testigos.
Nos resta, entonces, disponer de los planteamientos del peticionario en cuanto a la procedencia de la supuesta determinación del juez de instancia de excluir de la evidencia a desfilar en la vista del caso de acecho, los documentos que alegadamente demuestran la "maquinación" que aduce el peticionario medió entre la recurrida y su representante legal en el caso de divorcio para denunciarlo.
*943 La Regla 43 de las de Evidencia concede al juez que preside una vista, amplia discreción y control sobre el modo de presentación de la evidencia y de interrogatorio a los testigos para así lograr que la prueba sea mostrada en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando retrasos innecesarios. 
Por su parte, la Regla 5 de ese mismo cuerpo jurídico trata del efecto del error cometido por los tribunales en la exclusión de evidencia. Esta dispone que:

"No se dejará sin efecto una determinación de exclusión de evidencia, ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia a menos que:

(1) La evidencia fue erróneamente excluida, a pesar de que la naturaleza, propósito y pertinencia de la misma fue traída a la atención del tribunal mediante una oferta de prueba o por cualquier otro modo, y

(2) el tribunal que considera el efecto de la exclusión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita." 

En cambio, la Regla 6 de Evidencia establece que nada de lo dispuesto en la antes citada regla impedirá que un tribunal apelativo considere errores crasos y perjudiciales de admisión o exclusion de evidencia, a pesar de no haber mediado oportuna objeción, cuando el no corregir dichos errores resulte en un fracaso de la justicia.
En primer lugar, debemos señalar que en la minuta correspondiente a la vista celebrada en el caso de epígrafe, no consta la alegada determinación del juez de instancia de excluir los referidos documentos de la prueba a considerar, ni surge siquiera que los mismos le hayan sido ofrecidos en evidencia. El peticionario tampoco somete a nuestra consideración documento alguno que demuestre efectivamente que el tribunal recurrido haya hecho algún pronunciamiento relativo a la exclusión de dichos escritos de la evidencia a ser considerada.
Además, del análisis de los documentos que componen el Apéndice del presente recurso (los que constituyen la evidencia alegadamente descartada por el foro recurrido), surge que, de haber sido éstos, en efecto, excluidos, este hecho no hubiese sido factor decisivo o sustancial en la expedición de la orden cuya revocación se solicita. En dicho Apéndice, además de una copia de la orden recurrida, se presenta una serie de documentos legales que tienen relación con el trámite judicial del divorcio de la recurrida y el cliente de la peticionaria, Ingo Stapelfeld, pero no con los hechos que provocaron la solicitud de la orden de protección.
Así las cosas, y de conformidad con las disposiciones de la Regla 5 de Evidencia, no procede revocar la orden recurrida por razón de la alegada exclusión de dicha evidencia. La alegada exclusión tampoco produjo un fracaso de la justicia que amerite revocar la orden emitida, activando las disposiciones de la Regla 6 de Evidencia. Por ende, concluimos que el foro de instancia, en el ejercicio de la discreción que le confiere la Regla 43 de las de Evidencia, tenía la potestad de excluir los referidos documentos para salvaguardar la rapidez de los trámites judiciales y evitar retrasos innecesarios en un procedimiento cuya celeridad promueve la Ley 284, supra, estatuto rector de la presente controversia.
En ausencia de circunstancias extraordinarias en el caso de autos, y al no observarse indicios de pasión, prejuicio, parcialidad o error manifiesto en la decisión del foro de instancia en cuanto a que la recurrida fue víctima de acecho, provocado por el peticionario, procede otorgar deferencia a dicha determinación y a la orden de protección emitida a su amparo. No intervendremos con esa determinación, sobre todo cuando no tenemos ante nuestra consideración evidencia alguna que la derrote.
Por los fundamentos antes expuestos, se confirma la orden recurrida.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
*944 Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2001DTA 69
1. Véase "Minuta" del Tribunal de Primera Instancia, Apéndice del alegato de la recurrida, págs. 38-41.
2. Véase Apéndice del alegato de la recurrida, págs. 6 y 38.
3. Id. a la pág. 38.
4. Id.

5. Id.

6. Las siguientes personas declararon a favor de Ledo. López de Victoria: Irona Flores, Gerente de Pizza Circo, negocio de la propiedad del esposo de la recurrida; Angel Sánchez, amigo del Ledo. López de Victoria; e Ingo Stapelfeld, esposo de la recurrida y cliente del peticionario en el caso de divorcio.
7. En su recurso, el peticionario hace serias imputaciones contra la Leda. Lourdes Ortiz Pagán. Por razón de que el Tribunal Supremo es el foro a quien le compete intervenir en dicha materia, hemos acordado no discutir los méritos de las alegaciones del peticionario en cuanto al particular. Además, entendemos que no es necesario para disponer del recurso.
8. En el contexto de la Ley 284, "repetidamente" significa en dos (2) o más ocasiones.
9. Véase Exposición de Motivos de la Ley 284 de 21 de agosto de 1999.
10. Id.
11. Ley 284, Art. 3 (d).
12."Petición", a la pág. 3.
13. Id., a la pág. 4.
14. Los testigos presentados por el peticionario declararon, en esencia, que éste nunca mostró una actitud intimidante contra la recurrida en las ocasiones en que estuvo en las inmediaciones de su hogar.
15. Véase Regla 10 (D) de las de Evidencia, 32 L.P.R.A., Ap. IV, R. 10 (D).
16. 32 L.P.R.A., Ap. IV, R. 43.
17. 32 L.P.R.A. Ap. IV, R. 5.