Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ROBERTO ARROYO TORRES<br><br>*Recurrido*<br><br><br>v.<br><br><br><br>YOLANDA SANTIAGO RODRÍGUEZ<br><br>*Peticionaria* | KLAN202500494 | Apelación acogida como *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: SS2023CV00163 Salón 002<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Comparece ante nos, la señora Yolanda Santiago Rodríguez (señora Santiago Rodríguez o peticionaria) mediante recurso de *Apelación*[1] presentado el 30 de mayo de 2025 para solicitarnos que revoquemos la *Resolución Interlocutoria*[2] emitida el 29 de abril de 2025[3], por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* una *Moción en Solicitud de Reconsideración*[4], referente a una *Orden*[5] del 9 de abril de 2025[6], la cual declaró *No Ha Lugar* una *Moción Urgente en Solicitud de Remedios*[7] presentada por la peticionaria.

---

[1] Por motivos de economía procesal, acogemos la apelación como un recurso de *Certiorari* por ser el mecanismo adecuado para la revisión del dictamen recurrido, no obstante, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.
[2] Apéndice del recurso de *Certiorari*, a la pág. 37.
[3] Notificada el 30 de abril de 2025.
[4] Apéndice del recurso de *Certiorari*, a las págs. 32-36.
[5] Apéndice del recurso de *Certiorari*, a la pág. 31.
[6] Notificada en igual fecha.
[7] Apéndice del recurso de *Certiorari*, a las págs. 28-30.

Número Identificador
SEN2025_____

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *Certiorari* y **revocamos** la *Resolución Interlocutoria* recurrida.

**I.**

El caso de autos tuvo su génesis el 6 de marzo de 2023 cuando el señor Roberto Arroyo Torres (señor Arroyo Torres o recurrido) instó una *Demanda*[8] sobre división de comunidad de bienes en contra de la peticionaria. Tras varios trámites procesales, el 7 de marzo de 2024, con la autorización del foro recurrido, la señora Santiago Rodríguez presentó su *Contestación a la Demanda Enmendada*[9] y *Reconvención*[10].

Así las cosas, el 13 de febrero de 2025, se celebró una vista transaccional en la cual las partes de epígrafe estipularon ponerle fin al pleito[11]. Específicamente, estipularon que, de las tres propiedades que tenían en común, dos de ellas se le adjudicarían al señor Arroyo Torres y la restante a la señora Santiago Rodríguez[12]. Además, se estipuló que la peticionaria le pagaría la suma de cuarenta mil dólares ($40,000.00) al recurrido[13]. Esto, debido a que la propiedad que se le adjudicó a la señora Santiago Rodríguez tenía un valor mayor que las propiedades adjudicadas al recurrido[14].

En vista de lo anterior, el 19 de marzo de 2025[15], el TPI emitió una *Sentencia*[16], la cual fue enmendada *nunc pro tunc* el 9 de abril de 2025. En la *Sentencia Enmendada*[17] se hizo constar el acuerdo

---

[8] Apéndice del recurso de *Certiorari*, a las págs. 1-3.
[9] Apéndice del recurso de *Certiorari*, a las págs. 4-8.
[10] Apéndice del recurso de *Certiorari*, a las págs. 8-11.
[11] Véase, Transcripción de la Vista del 13 de febrero de 2025, a la pág. 49, líneas 16-18.
[12] Véase, Transcripción de la Vista del 13 de febrero de 2025, a la pág. 50, líneas 8-20 y a la pág. 51, líneas 1-12.
[13] *Íd.*, líneas 12-19.
[14] *Íd.*
[15] Notificada el 21 de marzo de 2025.
[16] Véase, Entrada 121 del Sistema Unificado de Manejo y Administración de Casos.
[17] Apéndice del recurso de *Certiorari*, a las págs. 12-15.

que puso fin a todas las controversias del caso de autos, el cual consistió en:

1. La demandada, Yolanda Santiago Rodríguez, retira la Reconvención presentada el 7 de marzo de 2024 sobre la nulidad de las capitulaciones matrimoniales, por lo quedan tres inmuebles y el reclamo y reconocimiento de unos créditos.

2. Las partes acuerdan que la finca 8,598 de San Sebastián, propiedad donde ubica el school supply, y que se describe más adelante, la retendrá la demandada, Yolanda Santiago Rodríguez, renunciando el demandado, Roberto Arroyo Torres, a su participación en la misma.

URBANA: Predio de terreno en el desvío de San Sebastián a Moca, radicada en el Barrio Bahomamey del Municipio de San Sebastián. Tiene una cabida de QUINIENTOS SETENTA Y SIETE PUNTO VEINTE METROS CUADRADOS (577 .20 M. C.); en 1indes a1 NORTE, con terrenos del Gobierno Municipal hoy Luis Irizarry Cardona, midiendo quince punto cincuenta metros ; a1 SUR en veinticuatro punto treinta metros, con Hip[ó]1ito Castro ; a1 ESTE, en veinticinco punto ochenta metros, con terrenos de uso público; y a1 OESTE, en diez punto sesenta metros y diecinueve punto veinte metros , con la carretera número ciento once (111) -----------

--- Enclava una estructura de dos plantas, cuya primer a planta es para fines comerciales y la segunda planta para fines residenciales Consta inscrita al Folio 41 del Tomo 469 de San Sebastián, Puerto Rico Finca Número 8,598 e inscripción décimo cuarta---------------------

—Catastro Número: 129-022—141-04-001.

3. El demandante, Roberto Arroyo Torres, retendrá la finca 6,919 de San Sebastián, la gomera y la finca 41,697 de San Juan, el apartamento, las cuales se describen más adelante, renunciando la demandada, Yolanda Santiago Rodríguez, a su participación en las mismas.

URBANA: Localizada en el Barrio Bahomamey de San Sebastián, Puerto Rico. Con una cabida superficial de trescientos cuatro puntos nueve mil ciento cincuenta y nueve (304.9159) metros cuadrados. Con lindes al NORTE, el Cementerio Viejo Municipal, al SUR, Carretera Estatal Numero Ciento Once (1 1 1), al ESTE, Pedro Castro y al OESTE, terrenos del Departamento de Transportación y Obras Públicas de Puerto Rico. Contiene una casa de bloques y hormigón dedicada a negocio los bajos y vivienda los altos y Otra estructura de hormigón y maderas dedicada a taller.-

-Consta inscrita al Folio uno (1) del Tomo Ciento Sesenta y Cuatro (164) de San Sebastián, Puerto Rico Finca Número: Seis Mil Novecientos Diecinueve (6,919). -----------------------

Número de catastro 129-022-141-05-001.

URBANA: PROPIEDAD HORIZONTAL: Apartamento Doscientos Quince (215). Apartamento residencial localizado en el piso dos (2) de la Torre denominada A del Condominio Plaza Universidad, sometido al Régimen de Propiedad Horizontal, ubicado en la calle Añasco del Municipio de San Juan, Puerto Rico. Apartamento de un solo nivel de forma rectangular y está localizado en la parte Oeste del edificio,

con un área total aproximada de Quinientos Sesenta y Dos puntos Noventa y Cinco (562.95) pies cuadrados, equivalentes a Cincuenta y Dos puntos Dos Mil Novecientos Noventa y Siete (52.2997) Metros Cuadrados. Sus lindes y distancias son las siguientes: por el NORTE, en una distancia de veintiún (21) pies siete (7) pulgadas, con el apartamento doscientos dieciséis (216); por el SUR, en una distancia de veintiuno (21) pies siete (7) pulgadas, con el apartamento doscientos catorce (214); por el OESTE, en una distancia de veinticinco (25) pies Cinco (5) pulgadas, con áreas comunes y pasillo por el ESTE, en una distancia de veinticinco (25) pies Cinco (5) pulgadas, con área de estacionamiento abajo. Este apartamento consta de un cuarto dormitorio, un baño completo, cocina y sala-comedor. La puerta de entrada de este apartamento está en el lado Oeste y por ella se sale al pasillo común que da a los ascensores y la escalera y de ahí se sale al exterior. Este apartamento tiene una participación en los elementos comunes limitados de 0.00217% y en los elementos comunes generales de 0.001702%. A este apartamento se le asigna el uso del estacionamiento marcado con el número dos (2) en el plano del área de estacionamiento del primer nivel de estacionamiento, como elemento común limitado. ------------ -INSCRITA al folio ciento doce (112) del tomo mil seiscientos dos (1602) de Rio Piedras, finca número cuarenta y un mil seiscientos noventa y siete (41 ,697), Registro de la Propiedad de San Juan, Sección Segunda. ----------Número de catastro: 063-092-421-03-022.

4. La Yolanda Santiago Rodríguez en un término no mayor de 30 días le pagara al demandante, Roberto Arroyo Torres, la suma de $40,000.00.

5. Cada parte asumirá los costos del traspaso de los títulos de las propiedades que pasaran a su nombre.

6. **Cualquier otra propiedad no incluida en este acuerdo será exclusivamente de la parte a nombre de quien figure, sin que la otra parte tenga derecho a ningún reclamo en las mismas**.

7. Cualquier otra deuda u obligación contraída por cualquiera de los cónyuges vigente el matrimonio será de su responsabilidad exclusiva, entendiéndose que el otro cónyuge queda relevado de cualquier obligación que surja. Esto implica que cualquier pasivo que pudiera surgir luego del divorcio se reputará a aquel que lo haya asumido.

8. **Cada parte asume los costos de mantenimiento, conservación, mejoras e impuestos en cuanto a las propiedades que le son adjudicadas, pasado y futuro, y libera de responsabilidad al otro comunero.** (Énfasis suplido).

9. Cada parte renuncia en cuanto a cualquier crédito que pueda tener a su favor por cualquier concepto.

10. Las partes expedirán y suscribirán todo documento necesario para formalizar la adjudicación de bienes pactada, incluyendo todos aquellos relevos recíprocos y documentos de indemnización referentes a los derechos y obligaciones que al presente pertenecen a ambos y los cuales serán cedidos o asumidos por el uno o por el otro bajo los términos de la presente estipulación.

11. Los honorarios y costas de este pleito pagados por cada uno de las partes serán asumidos por la parte que los incurrió[18].

En el ínterin de que la *Demanda* se enmendara, el 4 de abril de 2025, la peticionaria sometió una *Moción Urgente en Solicitud de Enmienda Nunc Pro Tunc o en la Alternativa de Reconsideración y de Otros Remedios*[19]. Allí esbozó que, el 23 de marzo de 2025, el señor Arroyo Torres entró a la propiedad adjudicada a ella sin su autorización y removió una cisterna que había en el techo de la propiedad y un tubo de drenaje. Asimismo, expresó que buscaría cotizaciones de los objetos removidos y solicitó que el valor se descontara de la cantidad que le debía pagar al recurrido según lo estipulado.

En respuesta, el 7 de abril de 2025, el señor Arroyo Torres sometió *Réplica a Moción Urgente en Solicitud en Enmienda Nunc Pro Tunc o en la Alternativa de Reconsideración y de Otros Remedios e Informativa*[20]. En esta argumentó que, la cisterna la compró

"cuando estaba realizando las mejoras a la propiedad, ya que en la misma no había agua, lo cual necesitaba para las mejoras que estaba realizando. Una vez se conectó el agua, la cisterna no volvió a usarse y no estaba instalada, la misma está llena de cemento, lo cual denota que no estaba en uso"[21].

**Asimismo, expresó que se "llevó la cisterna porque le pertenece, no es un accesorio de la propiedad y no fue parte de lo estipulado en la vista del 13 de febrero de 2025"**[22].

En cuanto al tubo, arguyó que:

"este lo compro en el Colegio Adventista, con el fin de usarlo en la propiedad que las partes le llaman la Gomera, no estaba instalado en la propiedad que se le adjudico a la demandada, por lo que no es un accesorio de dicha propiedad, y no es ningún tubo de desagüe. Los tubos de desagüe regularmente tienen un diámetro de 3 a 4 pulgadas, sin embargo, él tuvo del demandante tiene un diámetro de 25 pulgadas"[23].

---

[18] Apéndice del recurso de *Certiorari*, a las págs. 12-14.
[19] Apéndice del recurso de *Certiorari*, a las págs. 16-20.
[20] Apéndice del recurso de *Certiorari*, a las págs. 21-27.
[21] Apéndice del recurso de *Certiorari*, a las pág. 24.
[22] Apéndice del recurso de *Certiorari,* a la pág. 25.
[23] *Íd.*

Por su parte, el 9 de abril de 2025, la peticionaria sometió una *Moción Urgente en Solicitud de Remedio*[24], en la cual adjuntó una cotización de los objetos removidos por la cantidad de mil ochenta dólares con treinta y dos centavos ($1,080.32)[25]. Así pues, solicitó que el valor de la cotización se le descontara de la cantidad adeudada de cuarenta mil dólares ($40,000.00).

Evaluada tal solicitud, el 9 de abril de 2025, el TPI emitió y notificó una *Orden* en la cual declaró *No Ha Lugar* al petitorio de la señora Santiago Rodríguez. Inconforme, el 24 de abril de 2025, la peticionaria presentó *Moción en Solicitud de Reconsideración.* En ésta, le solicitó al foro recurrido lo siguiente:

> Disponga que, conforme al contrato de transacción al que llegaron las partes, el Demandante estaba impedido de remover propiedades del inmueble que le fue adjudicado a la Demandada, incluso habiéndose ya emitido Sentencia, por lo que el valor que resulta de estas propiedades removidas le será descontado de la cantidad a pagar por la Demandada;
>
> En la alternativa, disponga de la celebración de una vista evidenciaria en garantía del derecho a un debido proceso de ley para dirimir esta controversia; e
>
> Imponga al Demandado una suma no menor de $3,000 en honorarios de abogados y costas por el incidente que ha generado su incumplimiento con el contrato de transacción[26].

El 29 de abril de 2025[27], el TPI emitió una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la reconsideración de la peticionaria. Insatisfecha aun, el 30 de mayo de 2025, la señora Santiago Rodríguez acudió ante nos y le imputó al foro recurrido la comisión del siguiente error:

> ERRÓ EL TPI AL NO RESOLVER EN LOS MÉRITOS LA CONTROVERSIA Y CON FUNDAMENTO, SEÑALANDO AUDIENCIA DE SER NECESARIO EN GARANTÍA DEL DERECHO A UN DEBIDO PROCESO DE LEY, Y AL NO REALIZAR UNA INTERPRETACIÓN RESTICTIVA DEL ACUERDO DE LIQUIDACIÓN DE LAS PARTES Y, POR CONSIGUIENTE, AVALAR CON SU DETERMINACIÓN LA CONDUCTA DEL APELADO DE ENTRAR SIN AUTORIZACIÓN A UNA PROPIEDAD QUE YA HABÍA SIDO ADJUDICADA A LA APELANTE SIN CONDICIONES NI LIMITACIONES PARA REMOVER PROPIEDAD QUE NO LE

---

[24] Apéndice del recurso de *Certiorari*, a las págs. 28-30.
[25] Apéndice del recurso de *Certiorari*, a la pág. 30.
[26] Apéndice del recurso de *Certiorari,* a la pág. 36.
[27] Notificada el 30 de abril de 2025.

PERTENECÍA, LO CUAL NO ERA PARTE DE LOS ACUERDOS ALCANZADOS.

Ese mismo día, la peticionaria sometió una *Moción para que se Autorice Transcripción* de la vista transaccional celebrada el 13 de febrero de 2025. El 3 de junio de 2025[28], este foro apelativo emitió una *Resolución* en la cual autorizó la presentación de la transcripción de la prueba oral. Además, advertimos que, "presentada la transcripción, la parte apelada tendrá un plazo de **diez (10) días** para informar objeciones, si alguna. Transcurrido dicho término sin que se hayan presentado objeciones, este tribunal acogerá la misma como la estipulada entre las partes"[29]. (Énfasis suplido).

Así pues, el 5 de septiembre de 2025, la señora Santiago Rodríguez presentó *Moción para Someter Transcripción* junto a la transcripción de la vista transaccional. El 24 de septiembre de 2025[30], emitimos una *Resolución* en la cual dispusimos lo siguiente:

> El 5 de septiembre de 2025, la parte apelante presentó *Moción para Someter Transcripción.*
>
> En vista de que el plazo de **diez (10) días** para presentar objeciones, si alguna, concedido en nuestra *Resolución* de 3 de junio de 2025 ha transcurrido sin que se hayan presentado las mismas, este Tribunal acoge la transcripción como la reproducción de la prueba oral en el caso.
> Por tanto, se dispone que, la parte apelante tendrá hasta el **viernes, 10 de octubre de 2025** para presentar su alegato suplementario y la parte apelada deberá presentar su oposición al recurso en o antes del **lunes, 5 de noviembre de 2025.**
>
> Reiteramos que, cualquier alusión a la prueba oral que se haga en los alegatos, deberán referirse a la línea, párrafo y página correspondiente en la transcripción.
>
> Transcurridos los plazos concedidos, daremos por perfeccionado el recurso para su disposición final[31]. (Énfasis suplido).

Transcurrido los términos dispuestos, sin haber recibido los correspondientes alegatos de las partes de epígrafe, el 12 de

---

[28] Notificada el 13 de junio de 2025.
[29] Véase, *Resolución* del 3 de junio de 2025.
[30] Notificada en igual fecha.
[31] Véase, *Resolución* del 24 de septiembre de 2025.

noviembre de 2025[32], emitimos una *Resolución* dando por perfeccionado el recurso ante nuestra consideración. Por ende, procedemos a resolver sin el beneficio de la comparecencia de las partes.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[33] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[34]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[35]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[36].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[37]. No obstante, la Regla 52.1 de Procedimiento Civil, *supra*, faculta nuestra intervención en

---

[32] Notificada en igual fecha.
[33] 32 LPRA Ap. V, R. 52.1.
[34] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).
[35] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[36] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[37] *García v. Padró*, 165 DPR 324, 334-335 (2005*); Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).

situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[38].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido.

---

[38] 32 LPRA Ap. V, R. 52.1.

Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

Las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas. Son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas. Por ello, las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil[39]. Las estipulaciones deben interpretarse de forma liberal y compatible con la intención de las partes y el propósito de hacer justicia. Ahora bien, cuando una parte acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla[40].

De otra parte, las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas[41]. Tienen como finalidad evitar dilaciones, inconvenientes y gastos, por lo que su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica[42].

En nuestra jurisdicción se reconocen tres tipos de estipulaciones:

> (1) las que constituyen admisiones de hechos y dispensan del requisito de probarlos;
> **(2) aquellas que reconocen derechos y tienen el alcance de una adjudicación, y**
> (3) las estipulaciones que plantean determinado curso de acción, como, por ejemplo, la celebración de una conferencia con antelación al juicio; someter un asunto a un

---

[39] *Rivera Menéndez v. Action Services*, 185 DPR 431, 439 (2012); *Mun. de San Juan v. Prof. Research,* 171 DPR 219, 238 (2007); *P.R. Glass Corp. v. Tribunal Superior,* 103 DPR 223, 231 (1975).
[40] *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 693 (2001).
[41] *Rivera Menéndez v. Action Service*, 185 DPR 431, 439 (2012); *Díaz Ayala et. als. v. E.L.A.,* 153 DPR 675, 693 (2001); *Ramos Rivera v. E.L.A.,* 148 DPR 118, 126 (1999).
[42] *Íd.*

comisionado especial; o la admisión de determinadas pruebas[43]. (Énfasis nuestro).

Las estipulaciones de hechos tienen el efecto de dispensar el requisito de probar tales hechos. En otras palabras, cuando se admite o estipula un hecho, la parte está relevada de probarlo[44]. En estas situaciones, la estipulación sustituye la prueba que hubiera sido presentada en la vista del caso[45]. Una vez estipulado un hecho, la parte no puede impugnar el mismo posteriormente[46]. No obstante, las teorías o aseveraciones de las partes no forman parte de este tipo de estipulación[47].

**La segunda categoría de estipulaciones antes mencionadas son las estipulaciones que tienen el efecto de poner fin a un pleito o a un incidente en este. En este tipo de situación, el Tribunal Supremo ha resuelto que esa estipulación obliga a las partes y tiene el efecto de cosa juzgada[48]. Asimismo, esta clase de estipulación podría categorizarse como un contrato de transacción si reúne los requisitos de ese tipo de contrato[49].** (Énfasis nuestro).

Por su parte, "la tercera clase de estipulación es la que trata sobre materias procesales"[50]. En esta clase de estipulación, las partes acuerdan la forma y manera en la que se llevará a cabo determinado trámite procesal. En este tercer tipo de estipulaciones (las procesales), se puede incluir la autenticación de evidencia. Lo anterior es cónsono, no solo con la normativa general que promueve

---

[43] *Rivera Menéndez v. Action Services, supra, Mun. de San Juan v. Prof. Research*, 171 DPR 219, 238 (2007); *P.R. Glass Corp. v. Tribunal Superior*, 103 DPR 223, 230 (1975).

[44] *Rivera Menéndez v. Action Services, supra; Díaz Ayala et al. v. E.L.A., supra*, a la pág. 693; *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 571 (1998).

[45] *Rivera Menéndez v. Action Services, supra*, citando a *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 752 (1987); *Vda. de Rivera v. Pueblo Supermarkets*, 102 DPR 134, 139 (1974).

[46] *Rivera Menéndez v. Action Services, supra*, a las págs. 439-440; *Maldonado v. Consejo de Titulares*, 111 DPR 427, 434-435 (1981).

[47] *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981).

[48] *Rivera Menéndez, v. Action Services, supra*, a la pág. 440. (Notas al calce omitidas).

[49] *Íd.*

[50] *Íd.*

el uso de las estipulaciones como herramientas de simplificación procesal, sino con las Reglas de Procedimiento Civil[51].

**III.**

La parte peticionaria nos solicita que expidamos el auto de *certiorari* y revoquemos la *Resolución* post sentencia emitida por el TPI. Analizados los hechos del presente caso y el derecho aplicable, concluimos que procede expedir el recurso presentado al palio de los criterios de la Regla 40[52] de nuestro Reglamento, ya que el remedio y la disposición de la decisión recurrida son contrarios a derecho.

Tras evaluar minuciosamente el expediente, consideramos que la controversia que debemos resolver en este caso se circunscribe a si procede o no celebrar una vista evidenciaria ante la admisión del incumplimiento del contrato de transacción por parte del señor Arroyo Torres[53].

En esencia, la señora Santiago Rodríguez nos solicitó que revoquemos la *Resolución Interlocutoria* recurrida, pues adujo que el TPI incidió al no realizar una interpretación restrictiva del acuerdo de liquidación de las partes. Por consiguiente, arguyó que el foro recurrido avaló con su determinación la conducta del recurrido de entrar sin autorización a una propiedad que ya había sido adjudicada a ella sin condiciones ni limitaciones, para remover propiedad que no le pertenecía, lo cual no fue parte de los acuerdos alcanzados en la vista transaccional del 13 de febrero de 2025. Le asiste la razón, veamos.

Como adelantamos en el tracto procesal, el 13 de febrero de 2025, las partes de epígrafe estipularon ponerle fin al pleito[54].

---

[51] *Rivera Menéndez v. Action Services*, *supra*, a la pág. 441.

[52] Regla 40 del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR ____ (2025).

[53] Admitido en *Réplica a Moción Urgente en Solicitud en Enmienda Nunc Pro Tunc o en la Alternativa de Reconsideración y Otros Remedios e Informativa,* apéndice del recurso de *Certiorari,* a las págs. 21-27.

[54] Véase, Transcripción de la Vista del 13 de febrero de 2025, pág. 49, líneas 16-18.

Específicamente, estipularon sobre la distribución de los bienes en común[55]. Asimismo, estipularon que la peticionaria le pagaría la suma de cuarenta mil dólares ($40,000.00) al recurrido[56], determinaron sobre las mejoras[57] y determinaron que cualquier otra propiedad no incluida en el acuerdo sería exclusivamente de la parte a nombre de quien figure, sin que la otra parte tuviera derecho de ningún reclamo en las mismas[58]. Ante la otorgación del contrato de transacción y luego de escuchar a las partes el 13 de febrero de 2025 durante la celebración de la vista de transacción, el 19 de marzo de 2025[59], el TPI emitió una *Sentencia,* la cual fue enmendada *nunc pro tunc* el 9 de abril de 2025[60]. En la misma, el foro recurrido impartió la aprobación del acuerdo entre el señor Arroyo Torres y la señora Santiago Rodríguez y, en consecuencia, dictó *Sentencia* de conformidad con los términos del acuerdo, incorporándose en su totalidad, **quedando las partes sujetas a su estricto cumplimiento**.

Como bien esbozamos en la exposición del derecho, nuestro ordenamiento dispone que el contrato de transacción otorgado entre las partes tiene el efecto de poner fin a un pleito o a un incidente, lo cual fue advertido por el TPI en su sentencia. No obstante, el señor Arroyo Torres opta por incumplir con lo pactado porque entiende que **la cisterna no fue parte de lo estipulado en la vista transaccional**[61] y, con dicho raciocinio, decide entrar en la propiedad adjudicada a la señora Santiago Rodríguez y sin su autorización remover una cisterna que había en el techo de la propiedad y un tubo de drenaje. Esta conducta es una total

---

[55] Véase, Transcripción de la Vista del 13 de febrero de 2025, pág. 50, líneas 8-20 y pág. 51, líneas 1-12.
[56] *Íd.*, líneas 12-19.
[57] Apéndice del recurso de *Certiorari,* a las págs. 12-14.
[58] *Íd.*
[59] Notificada el 21 de marzo de 2025.
[60] Véase, *Sentencia Enmendada,* Apéndice del recurso de *Certiorari,* págs. 12-15.
[61] Apéndice del recurso de *Certiorari,* a la pág. 25.

desviación a las órdenes del TPI e incumplimiento con el contrato transaccional[62].

Por tanto, colegimos que, si el señor Arroyo Torres hubiese querido que se le adjudicara la cisterna y el tubo de desagüe, debió plantearlo el 13 de febrero de 2025 en la vista transaccional. Al no hacerlo, ambos objetos accesorios quedaron adjudicados a la propiedad de la peticionaria y, por ende, constituye cosa juzgada.

En virtud de lo anterior, consideramos que el TPI erró al no atender el petitorio de la señora Santiago Rodríguez, debido al incumplimiento con lo ordenado en la sentencia emitida por el TPI. Por tanto, procede devolver el caso de autos para que el foro recurrido celebre una vista evidenciaria para determinar el valor de la cisterna y el tubo, y determinado el cómputo, realizar el ajuste a la cantidad que la peticionaria quedó en pagarle al recurrido.

## IV.

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***expedimos* el auto de *certiorari* y *revocamos*** la *Resolución Interlocutoria* recurrida. Así pues, devolvemos el caso al foro primario, a los únicos fines de que celebre una vista evidenciaria y se adjudique el valor de los objetos removidos, para que dicha cantidad le sea descontada a la peticionaria de la cantidad estipulada ascendente a cuarenta mil dólares ($40,000.00) que debía pagar al recurrido.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[62] Véase los incisos núm. 6 dispone: *Cualquier otra propiedad no incluida en este acuerdo será exclusivamente de la parte a nombre de quien figure, sin que la otra parte tenga derecho a ningún reclamo en las mismas* y núm. 8: *Cada parte asume los costos de mantenimiento, conservación, mejoras e impuestos en cuanto a las propiedades que le son adjudicadas, pasado y futuro, y libera de responsabilidad al otro comunero.*